Robinson *et al. v.* Glass.

No. 10,347.

## ROBINSON ET AL. *v.* GLASS.

| | |
|---|---|
| 94 | 211 |
| 124 | 125 |
| 126 | 458 |
| 94 | 211 |
| 136 | 678 |
| 94 | 211 |
| 141 | 61 |
| 94 | 211 |
| 152 | 131 |
| 94 | 211 |
| 154 | 193 |
| 94 | 211 |
| 165 | 87 |

CONTINUANCE.—*Diligence.—Procuring Evidence.*—An affidavit for a continuance on account of the absence of a witness must show due diligence to procure his testimony, and that there is a reasonable probability that it can be procured if a continuance is granted.

CONTRACT.—*Negligence in Making.*—Where one of sound mind neglects to exercise ordinary prudence in the making of a contract, courts will not grant relief therefrom.

SAME.—*Neglect to Read Contract.*—It is, as a general rule, negligence on the part of one who can read but does not read an instrument which he executes, or if, being unable to read, he fails to exercise ordinary prudence in requiring the instrument to be read to him; *aliter,* if any trick or artifice is resorted to which prevents an opportunity for so doing.

MORTGAGE.—*Negligence in Execution.—Fraud.*—One who executes a mortgage without knowing its contents will not, unless prevented by artifice or trick for which the mortgagee is responsible, be relieved because its contents were not as the latter represented them, there being no relation of trust or confidence between the parties.

SAME.—*Agent.*—The employment of a trusted kinsman and friend or an agent of the mortgagor to misrepresent the contents of a' mortgage, whereby its execution is obtained without reading, is a fraud against which relief will be granted.

SAME.—*Consideration. — Judgment. — Payment. — Attorney's Fees. — Collateral Attack.*—A mortgage executed in payment of a judgment, held by the mortgagee against the mortgagor, is founded on a valuable consideration, and satisfies the judgment, nor can the allowance in the judgment of a sum for attorney's fees be questioned in a suit to foreclose the mortgage.

PRACTICE.—*Evidence.—Conflict.—Erroneous Instructions.—Harmless Error.*—The fact that a verdict seems to be strongly sustained by the evidence will not prevent a reversal for erroneous instructions, if there be a conflict of evidence.

STATUTE OF LIMITATIONS.—*Defences to Actions.*—Pure defences are not barred by the statute of limitations.

From the Clark Circuit Court.

*O. L. Jewett,* for appellants.

*A. Dowling* and *J. K. Marsh,* for appellee.

ELLIOTT, J.—The rule has long prevailed that to make available an erroneous refusal to continue a cause, the refusal must be assigned as a reason for a new trial. *Kent* v. *Law-*

*son,* 12 Ind. 675; *Bratton* v. *Bratton,* 79 Ind. 588; *Swan* v. *Clark,* 80 Ind. 57; *Continental L. Ins. Co.* v. *Kessler,* 84 Ind. 310. It has also been long settled that it is not proper to assign as error matters properly embraced by the causes stated in the motion for a new trial.

The question of the correctness of the ruling denying a continuance is, in this case, properly raised by the second specification in the assignment of errors, which is based on the ruling denying a new trial. We are satisfied that there was no error in overruling the motion for a continuance, and for this conclusion deem it only necessary to assign two reasons: 1st. There was not shown that diligence which the law requires of parties. 2d. It was not made to appear that there was any probability of obtaining the testimony of the person named in the application.

The controverted question in the case was whether the mortgage set forth in the appellee's complaint was obtained by fraudulent representations as to the property it covered and the amount of money it secured.

It is the law that one of sound mind must exercise prudence in making contracts, and if he neglects to exercise ordinary prudence, the courts will give him no relief. *Seeright* v. *Fletcher,* 6 Blackf. 380; *May* v. *Johnson,* 3 Ind. 449; *Rogers* v. *Place,* 29 Ind. 577; *Craig* v. *Hobbs,* 44 Ind. 363; *Bacon* v. *Markley,* 46 Ind. 116; *Nebeker* v. *Cutsinger,* 48 Ind. 436; *American Ins. Co.* v. *McWhorter,* 78 Ind. 136; *Williams* v. *Stoll,* 79 Ind. 80 (41 Am. R. 604); *Baldwin* v. *Barrows,* 86 Ind. 351. In *Gatling* v. *Newell,* 9 Ind. 572, it was said, in speaking of parties dealing upon an equal footing, that " The law will not relieve a man, thus circumstanced, for voluntarily neglecting to use common sense and judgment, if he has them."

A man who can read and does not read an instrument which he signs is, as a general rule, guilty of negligence, and so he is, if, being unable to read, he neglects to exercise ordinary prudence in requiring the instrument to be read to him. This is held in nearly all of the cases already cited,

Robinson *et al. v.* Glass.

and also in the cases of *Clodfelter* v. *Hulett*, 72 Ind. 137 ; *Dutton* v. *Clapper*, 53 Ind. 276. If any trick or artifice is resorted to which denies the person executing the instrument an opportunity of reading the instrument, or of having it read to him, the general rule does not operate.

The second instruction given by the court asserts the law substantially as we have stated it, and adds : " But what would be common prudence with one person might not be with another. The infirmity of age and of mind may be taken into consideration, where an effort has been made to deceive, in determining whether or not the person claimed to have been deceived exercised common prudence, such as persons similarly situated would ordinarily exercise under like circumstances. If such prudence is not exercised, there is no legal fraud ; if exercised, and the person is deceived, then there is such fraud as the law will relieve from." It is clear to our minds that the appellants were given no reason to complain by this instruction.

Where a party has himself acted in good faith, and has yielded the person with whom he contracts just value for a mortgage, the fraud of a third person, not shared by the mortgagee, can not destroy the validity of the mortgage. 1 Whart. Cont., section 247.

The rule that contracting parties must exercise ordinary prudence in conducting negotiations and executing instruments is not, as counsel for appellees contend, confined to cases where the rights of third persons have intervened. Many of the cases we have already cited prove that the rule prevails where the controversy is between the immediate parties, and an examination of the text-books will show this to be true, and show also that it is so even in equity, as well as at law. 2 Pomeroy Eq., section 893 ; 2 Kent Com. 485. Judge Story said : " Courts of equity do not sit for the purpose of relieving parties, under ordinary circumstances, who refuse to exercise a reasonable diligence or discretion." 1 Story Eq., section 200, *a.*

It was proper to direct the jury that if the mortgages were executed in payment of judgments owned by the mortgagee, it operated as a satisfaction of them. Judgments may be satisfied by the acceptance of a mortgage, and the release of a judgment is a valuable consideration.

Attorneys' fees allowed upon a claim duly reduced to judgment can not be brought into question in a subsequent collateral suit.

We think the instructions upon the two propositions last stated were relevant to the case made by the evidence, and that they are not subject to the objections urged against them.

We have stated the general rule to be that one who signs an instrument must read it, or have it read to him, and have said that the rule does not operate where a trick or artifice is resorted to for the purpose of preventing the person from reading the instrument. We are now to consider what may be deemed such a trick or artifice. Ordinarily, one contracting party has no right to rely upon the statements of the other as to the character or contents of a written instrument (this, indeed, is only another form of stating the general rule); but while this is true, it is also true that if a known trust and confidence is reposed in the person making the representations, and there is a relationship justifying such trust and confidence, then the person to whom the representations are made may rely upon them. *Shaeffer* v. *Sleade*, 7 Blackf. 178; *Peter* v. *Wright*, 6 Ind. 183; *Bischof* v. *Coffelt*, 6 Ind. 23; *Matlock* v. *Todd*, 19 Ind. 130; *Worley* v. *Moore*, 77 Ind. 567; 2 Parsons Cont. (7th ed.) 774. One who occupies the position of an agent, or any like position, is required, in all negotiations and contracts, to state all matters within his knowledge fully and truly to his principal, and to make no statements that are not true in every material particular. 1 Whart. Cont., section 254, auth. n. It follows from this that the principal may, without inquiry or investigation, rely on the statements of the agent, or confidential adviser, as to the contents of a written instrument which is presented for signature by a third person, to

whom the agent or confidential adviser should, if faithful to his trust, occupy an adverse relation.

It can not be doubted that the man is guilty of fraud who knowingly procures an agent, or a person trusted and confided in as a kinsman and friend, to falsely represent the contents of a writing, and thus prevents its being read by the person whose adviser and kinsman has been employed to betray him. This is such a trick or artifice as not only excuses the reading of the instrument, but condemns the whole transaction as corrupt and fraudulent.

Tested by these rules, the first instruction asked by the appellants states the law correctly, and should have been given.

We agree with appellee's counsel that if instructions asked are substantially and fairly covered by those given, there is no error; but we think the instructions in this case do not cover that asked by the appellants; on the contrary, one of them asserts a different doctrine, for, in the latter part of the third instruction, it is affirmed that although the appellants' son and agent deceived them, and the deception was practiced pursuant to a conspiracy between him and the appellee, the defence could not succeed unless, to borrow a phrase from the instruction, " the old people exercised common prudence before executing the mortgage." If a fraudulent conspiracy was formed, and its purpose was to seduce the agent into a betrayal of trust, and he did betray it by falsely representing the character and contents of the instrument, the defence was completely made out, and the question of whether the mortgagors did or did not read the mortgage ceased to be of importance.

It is urged by appellee that, even if there is error in the instruction, the verdict and judgment are so clearly right on the evidence that there should be no reversal. We have read the evidence with care, and find that it is strongly in favor of the appellee, but we can not decide that it is so clearly so as to permit us to pronounce the result reached right, notwithstanding the error in the instruction. It is only where the evidence clearly and convincingly makes it appear that a right

result was reached that we can disregard material errors in the instructions. We can not, where there is, as here, sharp conflict in the evidence, pronounce upon the credibility of witnesses and affirm the judgment on the evidence, notwithstanding the jury were misdirected as to the law.

In the argument on the assignment of cross errors, it is contended that, as the mortgage was executed more than six years before the suit was instituted and the defence of fraud interposed, the rights of the appellants are barred by the statute of limitations. This position is untenable. Actions are barred but defences are not. A person who is sued upon a contract may show that it was procured by fraud, although more than six years elapsed before the action on the contract was instituted and the defence interposed. We speak now of pure defences, and not as to matters which may be relied upon as forming a foundation for a counter-claim or cross complaint. The cases of *Sidener* v. *Galbraith*, 63 Ind. 89, *Pilcher* v. *Flinn*, 30 Ind. 202, and *Gray* v. *Stiver*, 24 Ind. 174, apply to actions, not to defences.

Judgment reversed.

Filed March 15, 1884.